UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

VANCE V. LAKE, SR.,                          )
                                             )
         Plaintiff,                          )
                                             )
    v.                                       )        No. 4:20 CV 205 CDP
                                             )
ANDREW M. SAUL,                              )
Commissioner of Social Security,             )
                                             )
         Defendant.                          )

## MEMORANDUM AND ORDER

Plaintiff Vance V. Lake, Sr., brings this action under 42 U.S.C. § 405

seeking judicial review of the Commissioner's final decision denying his claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*  Because the administrative law judge's (ALJ's) assessment

of Lake's residual functional capacity (RFC) appears to include a limitation that

was more restrictive than what was included in the hypotheticals posed to the

vocational expert (VE), I cannot say that the VE's testimony in response

constituted substantial evidence to support the ALJ's determination that Lake

could perform work in the national economy.  I must therefore reverse the

Commissioner's decision and remand the matter for additional proceedings.

### Procedural History

On April 7, 2017, the Social Security Administration denied Lake's October

2016 application for DIB in which he claimed he became disabled because of neck and back injury; arthritis in neck, back, and shoulder; shoulder injury; and effects of spinal surgery.[1]  Lake initially claimed disability as of January 28, 2012, but he later amended his alleged onset date to October 1, 2015.  At Lake's request, a hearing was held before an ALJ on November 1, 2018, at which Lake and a VE testified.  On March 11, 2019, the ALJ denied Lake's claim for benefits, finding VE testimony to support a conclusion that, during the relevant period, Lake could perform work as it existed in significant numbers in the national economy.  On January 3, 2020, the Appeals Council denied Lake's request for review of the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, Lake asserts that the ALJ committed legal error in two respects:  1) that in crediting the VE's testimony, the ALJ failed to resolve a conflict between the expert's testimony and the Dictionary of Occupational Titles (DOT); and 2) that the ALJ improperly applied VE testimony to an RFC assessment that was more restrictive than the hypothetical posed to the expert.  For the following reasons, I will reverse the ALJ's decision and remand the matter for further proceedings.

---

[1] Lake filed an application for DIB in October 2013, which was denied by an ALJ on August 28, 2015.  The Appeals Council denied review on August 26, 2016.  Lake did not pursue this application further.  He makes no claim in this action that the Commissioner should have reopened this earlier application.

## Medical Records and Other Evidence Before the ALJ

Lake underwent anterior cervical discectomy and fusion surgery in August 2013 in response to pain and limitations caused by cervical disc degeneration and cervical herniated nucleus pulposus with radiculopathy related to a work injury sustained in January 2012.  Lake underwent such surgery because conservative therapies had failed to relieve numbness in Lake's left hand and pain in his left arm and shoulder.  (*See* Tr. 505.)  After surgery, Lake continued to experience pain about the left shoulder, although the degree of his pain and weakness had improved.  He also experienced neck pain and limited range of motion in all planes of the cervical spine.  (*See* Tr. 372-73, 381.)  In June 2014, an independent medical examiner recommended that Lake limit any work above shoulder level and limit lifting above the left shoulder.  (Tr. 383.)  In the August 2015 determination of non-disability on Lake's earlier application for benefits, the ALJ incorporated these limitations into the RFC – specifically, "claimant should avoid . . . prolonged repetitive working above shoulder level and lift no more than fifteen pounds above left shoulder level[.]"  (Tr. 76.)

On October 1, 2015, Lake was diagnosed with chronic neck pain with limited range of motion and cervical radiculopathy.  (Tr. 399-402.)  He reported on November 2, 2015, that he could not use his left arm or shoulder; and his treating physician noted neck pain, weakness in the bilateral upper extremities, and limited

Case: 4:20-cv-00205-CDP   Doc. #:  18   Filed: 03/29/21   Page: 4 of 15 PageID #: 964

strength in both shoulders.  (Tr. 403-07.)  Lake continued to complain of muscle weakness in both shoulders in December 2015.  (Tr. 408.)  In January 2016, Lake complained of continued pain in his neck and left shoulder, as well as weakness in his left arm.  (Tr. 445.)  Examination in March 2016 showed spasm about the neck. (Tr. 414-17.)  Lake's complaints of neck pain and limited range of motion about the neck continued into and throughout 2017.  (*See*, *e.g.*, Tr. 473, 503, 603, 629.)

In May 2016, Lake reported that he had had right elbow pain and biceps tenderness for several months but that he had recently experienced a sudden "pop" in his right elbow.  Examination showed "obvious rupture" of the biceps muscle, but Lake was noted to have good range of motion about the elbow and fairly good strength.  (Tr. 442.)  An MRI taken of the right elbow on May 20, 2016, showed chronic partial tear of the distal biceps and distal brachialis tendon.  (Tr. 387.) Nothing in the record shows that Lake thereafter made additional complaints or received additional treatment for these right elbow conditions.

At the administrative hearing on November 1, 2018, Lake testified that the cervical fusion surgery in 2013 did not relieve all of his pain and that he had limited range of motion about his neck because of the surgery.  Lake testified specifically that he was limited in his ability to turn his head side to side and in his ability to look up and down.  He testified that he was told that he would always have limited motion of his neck.  (Tr. 55.)  When asked particularly about his left

- 4 -

shoulder, Lake testified that he could reach above his head and in front of him but with pain.  (Tr. 56.)  When asked particularly about his right shoulder and arm, Lake testified that they currently did not bother him as much as his left shoulder. (Tr. 58.)

At this hearing, the ALJ asked the VE to consider a hypothetical individual of Lake's age, education, and work experience and to consider that such a person was limited to, *inter alia*, "occasional overhead reach on the left; frequent reaching in other directions on the left[.]"  (Tr. 59.)  The VE testified that such a person could perform work in the national economy as a mail clerk, sorter, and electronics worker as such work is defined in the DOT and as based on the expert's experience, education, field research, and review of published data.  (Tr. 59, 67.) The VE testified that, because Lake was right-handed, these jobs would remain applicable if the overhead reaching limitation was reduced to "never."  (Tr. 59-60.) A review of this exchange and the VE testimony *in toto* shows that the VE considered the hypothetical upper-extremity limitations to be restricted to the left side only.  (Tr. 58-67.)

### The ALJ's Decision

The ALJ found that Lake met the insured status requirements of the Social Security Act through June 30, 2016.  He further found that Lake had not engaged in substantial gainful activity since the alleged onset date of disability.  The ALJ

found that through the date last insured, Lake had the following severe

impairments:  degenerative disc disease of the cervical and lumbar spine, status

post C6-7 fusion; degenerative joint disease of the left shoulder; and chronic partial

tear of the right biceps and brachialis tendon.  (Tr. 15.)  The ALJ found, however,

that these impairments, whether considered singly or in combination, did not meet

or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (Tr. 18.)

The ALJ determined that Lake had the RFC to perform light work but with

additional restrictions:

> [T]he claimant can frequently operate either left or right foot controls,
> never climb ladders, ropes, or scaffolds and never balance, kneel,
> crouch, or crawl.  The claimant can occasionally climb ramps or
> stairs, stoop.  The claimant can occasionally overhead reach and
> frequently reach in other directions with the left upper extremity.  The
> claimant must avoid concentrated exposure to pulmonary irritants,
> excessive vibration, and the extremes of heat and cold.  He must avoid
> all exposure to workplace hazards, such as operational control of
> moving machinery and unprotected heights.

(Tr. 19.)  The ALJ found that Lake's RFC precluded performance of his past

relevant work as a truck driver and motor vehicle assembler.  Considering Lake's

RFC, age, education, and work experience, the ALJ determined that VE testimony

supported a finding that Lake could perform other work as it exists in significant

numbers in the national economy, and specifically as a mail clerk, sorter, and

electronics worker.  The ALJ thus found that Lake was not under a disability at any

time from the alleged onset date through June 30, 2016, the date Lake was last insured.  (Tr. 22-23.)

## Legal Standard

To be entitled to DIB under the Social Security Act, Lake must prove that he was disabled prior to the expiration of his insured status.  *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the

claimant has a "severe" impairment or combination of impairments, meaning that

which significantly limits his ability to do basic work activities.  If the claimant's

impairment(s) is not severe, then he is not disabled.  The Commissioner then

determines whether claimant's impairment(s) meets or equals one of the

impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's

impairment(s) is equivalent to one of the listed impairments, he is conclusively

disabled.  At the fourth step, the Commissioner establishes whether the claimant

can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the

Commissioner evaluates various factors to determine whether the claimant can

perform any other work in the economy.  If not, the claimant is declared disabled

and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is not based on legal error

and if there is substantial evidence on the record as a whole to support the

conclusion.  *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010).  "Substantial

evidence . . . is 'more than a mere scintilla.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S.

197, 229 (1938)).  "It means – and means only – 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting

*Consolidated Edison*, 305 U.S. at 229).  Determining whether there is substantial

evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th

Cir. 2007).

## Discussion

Of the two errors raised by Lake, I agree that the ALJ improperly applied VE testimony to an RFC assessment that appeared to be more restrictive than the hypothetical posed to the expert.  Given my resolution of this issue, I need not address Lake's other claim that the ALJ failed to resolve the conflict between VE testimony and the DOT.

At the hearing on November 1, 2018, the ALJ asked the VE to consider a hypothetical individual who was limited to, *inter alia*, "occasional overhead reach on the left" and "frequent reaching in other directions on the left[.]"  (Tr. 59.) Upon consideration of other hypothetical limitations not relevant here, the VE responded that such a person could perform unskilled, light work as a mail clerk, listed at DOT 209.687-026; as a sorter, listed at DOT 222.687-014; and as an electronics worker, listed at DOT 726.687-010.  (Tr. 59.)  The DOT describes these jobs as requiring frequent reaching without regard given to direction.  The VE testified that, in conjunction with the job descriptions in the DOT, she relied on her experience, education, published data, and field research when considering jobs that a person restricted to "use of one arm" could perform.  (Tr. 67.)  In his written decision, the ALJ relied on the VE's testimony to conclude that Lake could perform work in the national economy.  (Tr. 23.)

In his written RFC assessment, the ALJ found that Lake was limited to "occasionally overhead reach and frequently reach in other directions with the left upper extremity." (Tr. 19.)  Lake argues that when read in context with the record as a whole and with the ALJ's written decision in its entirety, the modifier "with the left upper extremity" in the RFC assessment applies only to the ALJ's finding regarding Lake's ability to "frequently reach in other directions," and that the "occasionally overhead reach" limitation applies to both upper extremities. Because the hypothetical posed to the VE explicitly limited overhead reaching with regard to only the left upper extremity, Lake argues that the bilateral overhead reaching limitation in the RFC is more restrictive than the hypothetical and thus that the ALJ erred in relying on the expert's testimony to find Lake able to perform other work.  For the following reasons, I agree.

First, I note that in assessing Lake's RFC in his written decision, the ALJ appears to primarily focus on Lake's <u>right</u> arm impairment, as well as examination and treatment beginning in December 2016 of radiating low back/lumbar pain. The ALJ's RFC analysis is silent as to other impairments and limitations Lake experienced during the period relevant to his DIB status – that is, October 1, 2015 to June 30, 2016 – including limited mobility of the neck, neck pain, neck spasms, and diminished strength in both shoulders, despite substantial objective and clinical evidence of these impairments and the limitations Lake experienced.  Notably,

although the ALJ wrote in his decision that Lake went more than six months after October 1, 2015, with little treatment for his impairments (Tr. 20), the record shows that Lake visited and was examined by physicians on no less than five separate occasions during this six-month period for neck pain, limited range of motion about the neck, and *bilateral* upper-extremity weakness and pain. Moreover, in response to these issues, Lake was prescribed gabapentin, Lyrica, and Lodine during this period; underwent MRI imaging of the head and spine; was referred to and examined by a neurologist; and was referred to a chronic pain specialist. (*See* Tr. 402, 407, 410, 416-17, 445-46.)  But the ALJ's decision is silent in this regard.  Regardless, this substantial evidence of record shows that to the extent Lake was limited in his ability to overhead reach during the relevant period, such limitation was bilateral in nature and not restricted to just the left side.

The ALJ's written decision itself supports this conclusion.  As noted above, to the extent the ALJ addressed any upper-extremity impairment in his decision, he focused his discussion only on Lake's right-arm impairment.  Without the ALJ's passing reference to degenerative joint disease of the left shoulder in the list of Lake's severe impairments (*see* Tr. 15), one would not know from the ALJ's decision that Lake had limitations on his left side at all.  Given the ALJ's emphasis on Lake's right-arm impairment with no discussion of Lake's left-shoulder impairment, it does not logically follow that the overhead reaching limitation in the

- 11 -

RFC assessment applied only to Lake's left upper extremity.  This is especially true here when the ALJ's decision is considered against the backdrop of the medical record and other relevant evidence showing that the limited range of motion about Lake's neck restricted his ability to look up and to turn his head side to side and, further, that he experienced pain and weakness in both shoulders during the relevant period.

I reject the Commissioner's argument that the ALJ's RFC assessment was necessarily limited to only Lake's left upper extremity given Lake's testimony at the hearing that the problems with his right shoulder were "not bad," except for "just a little" in his bicep area.  (*See* Tr. 58.)  The ALJ did not state in his decision that he considered this testimony in determining Lake's RFC.  As a reviewing court, I may not uphold the ALJ's decision based on reasons not articulated in the decision.  *See Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990).  Regardless, the Commissioner does not explain how Lake's testimony in November 2018 about his then-current issues or non-issues with his right arm is relevant to the period of disability at issue in this DIB case, given that Lake's insurance status expired over two years earlier in June 2016.

With an August 2015 finding by the Social Security Administration that Lake should avoid repetitive work above shoulder level; substantial medical evidence from the relevant period showing limited range of motion about Lake's

- 12 -

neck in all planes, and pain and weakness in the upper extremities bilaterally; and the ALJ's focus on Lake's impairment of the right upper extremity in his written decision, I cannot conclude that the ALJ's written RFC assessment limited Lake's ability to reach overhead with regard to his left arm only.  For these same reasons, if the ALJ clearly stated in the RFC assessment that overhead reaching was limited with regard to the left side only, I cannot say that this limited restriction is supported by substantial evidence on the record as a whole.

If a hypothetical posed to a VE does not encompass all relevant effects of a claimant's impairments, the VE's testimony given in response cannot constitute substantial evidence to support an ALJ's decision.  *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010); *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012).  The various hypotheticals posed to the VE here included an overhead reaching limitation with regard to only the left upper extremity.  Because the ALJ's written RFC assessment appeared to contain a limitation on overhead reaching bilaterally, the VE should have been required to provide testimony regarding the extent to which the occupational base is reduced by this bilateral limitation.  *Cf. Jones*, 619 F.3d at 976-78 (noting expert testified that number of occupations would be reduced by ten to fifteen percent because of claimant's limitation to occasional handling).  Because the VE was not given this opportunity, it cannot be said that the ALJ's reliance on the expert's testimony to find Lake not disabled is supported

by substantial evidence.  Because no hypothetical contained all of Lake's limitations as found by the ALJ in his RFC determination, the matter must be remanded so that a proper hypothetical may be posed to a VE.  *Fletcher v. Colvin*, No. 4:13CV2064 TIA, 2015 WL 1474321, at *11 (E.D. Mo. Mar. 31, 2015).

Although resolution of this claim results in my not needing to address Lake's remaining claim that the ALJ failed to resolve the conflict between VE testimony and the DOT, I nevertheless note that the ALJ's decision in this regard is not clear (*see* Tr. 23), especially given the VE's testimony that she based her opinion on matters not addressed by the DOT (Tr. 66-67).  Upon remand and elicitation of VE testimony in response to a properly phrased hypothetical that captures the concrete consequences of all of Lake's impairments, both severe and non-severe, *see* 20 C.F.R. § 404.1545(e); *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008), the ALJ is reminded of his/her obligations to make sufficient inquiry to determine whether conflict exists between VE testimony and the DOT, and to "*explain in the determination or decision* how he or she resolved the conflict." *Policy Interpretation Ruling: Titles II & XVI:  Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000) (emphasis added).  *See also generally Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014).

## Conclusion

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**REVERSED**, and this matter is **REMANDED** to the Commissioner for further

proceedings consistent with this Memorandum and Order.

A separate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 29th day of March, 2021.